UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT CANNADY,<br><br>*Plaintiff*,<br><br>v.<br><br>KYNDRYL HOLDINGS, INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 24-03638 (AHA) |

**Memorandum Opinion**

Vincent Cannady is detained pending sentencing on extortion charges in the Southern District of New York. He is also party to an ongoing civil suit in the Western District of Missouri involving some of the same events at issue in the criminal case. He now files this action alleging that dozens of government actors and private parties involved in those proceedings have conspired to violate his rights. Some of the defendants move to dismiss, while others have not yet responded to the amended complaint. Upon review of Cannady's complaint, the court dismisses it for various reasons, including lack of jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); 28 U.S.C. § 1915A(a) (requiring the court to review prisoner actions seeking redress from the government or its officers "before docketing, if feasible or, in any event, as soon as practicable after docketing").

I.      **Background**[1]

Cannady sues more than fifty defendants, including federal government officials, a federal judge, a state correctional facility, and multiple private corporations, for violating his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, the Civil Rights Act of 1964, and the Americans with Disabilities Act. Although the amended complaint spans many different events—some seemingly unrelated to one another—and is at times difficult to parse, it appears to allege the following: Cannady worked for a company called Experis or Manpower, which seem to be the same entity. ECF No. 7 ¶ 17. That employer assigned Cannady to do information technology work for another company called Kyndryl. *Id.* ¶ 7. At some point, Cannady's work with Kyndryl ended. Although the amended complaint provides little information on this point, it asserts that Cannady was "illegally terminated from his position" for discriminatory reasons. *Id.* ¶¶ 7, 17. The amended complaint alleges that Cannady saved several of Kyndryl's files in an effort to challenge that termination in court because they show that Cannady "WAS NOT terminated for performance reasons." *Id.* ¶ 8. Although it is difficult to discern the chronology of the events that followed, the amended complaint states that the conflict between Cannady and Kyndryl is the subject of an ongoing civil suit in the Western District of Missouri. *Id.* ¶¶ 5, 23. According to the amended complaint, in that litigation Kyndryl represented that Cannady twice tried to extort the company by asking for large sums of money in exchange for not challenging his termination in court and keeping the files private. *Id.* ¶ 8. Cannady has countered by alleging that Kyndryl violated his constitutional rights and various employment laws. *Id.* ¶¶ 5, 17, 19; *see* Complaint, *Kyndryl, Inc.*

---

[1] As required at this stage, the court accepts the amended complaint's well-pled allegations as true and draws all reasonable inferences in Cannady's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

*v. Cannady*, No. 23-cv-03279 (W.D. Mo. Sept. 11, 2023), ECF No. 19. Later, Cannady was charged with extortion in the Southern District of New York for the same conduct at issue in the civil suit. *Id.* ¶¶ 5, 10. The civil suit has been stayed while the criminal case is ongoing. *Id.* ¶ 9.

## II.     Discussion

A court may dismiss a complaint on its own accord under Federal Rule of Civil Procedure 12(h)(3) when it clearly lacks subject-matter jurisdiction. *Evans v. Suter*, No. 09-5242, 2010 WL 1632902 (D.C. Cir. Apr. 2, 2010). Courts also have an independent obligation to screen civil complaints by prisoners who sue the government or government officials. *See* 28 U.S.C. § 1915A. The reviewing court must dismiss the complaint or any portion of it if, relevant here, it "fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Dismissal under this provision is appropriate even if the defendant has not yet responded to the complaint. *See Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998).

To survive dismissal, the plaintiff must state a facially plausible claim, which means "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. Cannady's Complaint Is Deficient In Several Respects And Must Be Dismissed

The court is mindful of its obligation to construe pro se complaints, like this one, liberally. *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002). Even so, the

3

amended complaint fails to state a claim that can be litigated in this court and must be dismissed. The allegations and claims at issue here either overlap with or seek relief related to two ongoing cases in other districts, and interfering with either would raise serious jurisdictional and comity concerns.

The first case is a civil lawsuit in the Western District of Missouri. The amended complaint states that some combination of Experis, Manpower, and Kyndryl illegally terminated Cannady's employment. ECF No. 7 ¶ 17. This claim is already being litigated in Missouri. "[W]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first" to promote "comity and orderly administration of justice." *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). Indeed, another court in this district has already dismissed a complaint Cannady filed here alleging that Kyndryl discriminated against him because he "filed a substantially similar counter-complaint in the Missouri Action"—the exact same Missouri action identified in the instant amended complaint. *See* Order, *Cannady v. Kyndryl*, No. 23-cv-02649 (D.D.C. Jan. 5, 2024), ECF No. 4. The amended complaint further alleges that Kyndryl colluded with the government to stay the Missouri case. ECF No. 7 ¶ 9. The collusion to stay claim seems to be an attempt to circumvent an adverse ruling by another federal district court. This court cannot grant that relief. "A federal district court lacks jurisdiction to review decisions of other federal courts." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006); *see United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) (recognizing that district courts "generally lack[] appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts"). Cannady has already filed at least one other complaint in this district that was

4

dismissed for the same reason. *See Cannady v. Missouri*, No. 20-cv-00205, 2020 WL 1975438, at *2 (D.D.C. Apr. 24, 2020).

The second case is a criminal prosecution in the Southern District of New York. The main thrust of the amended complaint is that the government colluded with Experis, Manpower, Kyndryl, and Kyndryl's attorneys to charge Cannady with extortion in New York and imprison him. *See* ECF No. 7 ¶¶ 5, 17, 18, 23. The amended complaint also challenges other aspects of the criminal case. For example, it alleges that the bond order issued by the presiding judge is unconstitutional. *Id.* ¶ 10. It further alleges that the federal public defenders who represented Cannady in the bond process did not inform him of the terms of the bond agreement and "trick[ed]" him into signing it. *Id.* ¶ 13. It also seems to allege that the person listed on the criminal case docket is another individual who happens to share Cannady's name, and that the federal public defenders who formerly represented him waived his right to an "identity hearing" at which he could clear up the confusion. *Id.* ¶¶ 10, 13. It alleges that the prosecutor withheld exculpatory evidence. *Id.* ¶ 11. Finally, it states that the presiding judge wrongfully denied various motions filed by Cannady. *Id.* ¶¶ 14, 27.

As explained, this court cannot review the orders of the judge presiding over Cannady's criminal case. To the extent that Cannady wishes to sue the judge and the prosecutor for damages, those claims fail at the outset. "Judges are absolutely immune from suits for money damages for 'all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction.'" *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 17 (D.D.C. 2014) (quoting *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993)). "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Additionally, a "judge will not be deprived of immunity because the action

he took was in error, was done maliciously, or was in excess of his authority." *Id.* To determine whether a judge was acting in their judicial capacity, courts look to the "nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362. Here, each of the judge's challenged actions was taken within his judicial capacity. Issuing bond orders and denying motions are actions routinely performed by judges, and Cannady clearly understood the judge to be acting in his judicial capacity when he made these decisions—the amended complaint even acknowledges that "the Judge and the Court are immune from litigation." ECF No. 7 ¶ 14.

The amended complaint does not state a viable damages claim against the prosecutor for a similar reason. Prosecutors are immune from civil damages suits when "initiating a prosecution," "presenting the [government's] case," and other activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). "[I]t follows from *Imbler* that the failure, be it knowing or inadvertent, to disclose material exculpatory evidence before trial also falls within the protection afforded by absolute prosecutorial immunity." *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995). Any damages claim against the prosecutor for charging Cannady with extortion or withholding exculpatory evidence therefore fails as a matter of law.

The amended complaint does not appear to assert claims for damages against the federal public defenders, but it does allege that "both did willfully provide Vincent N. Cannady ineffective representation leading to his continued incarceration." ECF No. 7 ¶ 13. At best, the court could construe this as a habeas petition challenging his pretrial detention under 28 U.S.C. § 2241. This court lacks jurisdiction to review such a claim. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443

6

(2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

In addition to these defects, dismissal is also appropriate because the amended complaint fails to state any claims. It consists mostly of conclusory assertions about collusion devoid of supporting factual allegations that could render them plausible. For example, the amended complaint states that Kyndryl worked with the government to seek a stay of the Missouri litigation "to keep Vincent N. Cannady from Serving Subpoenas and getting other Discovery that is Exculpatory." ECF No. 7 ¶ 9. It does not plead any "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The amended complaint repeatedly states that Kyndryl worked with the government to initiate the New York prosecution and relies on a series of disjointed observations to support this conclusion. For example, the amended complaint points out that some of the attorneys who represented Kyndryl in the Missouri litigation previously worked as federal prosecutors in Westchester, New York. ECF No. 7 ¶ 23. It adds that the attorneys "routinely showed up at court hearings" until Cannady accused them of collusion. *Id.* Finally, it notes that the Westchester U.S. Attorney's Office "has made appearances in" a Second Circuit case against IBM (the amended complaint never explains the connection between IBM and Kyndryl, but it implies that the two are somehow related), and that the law firm that the attorneys now work at was involved in that case as well. *Id.* These allegations do not create a plausible inference of collusion.

The same thing goes for the amended complaint's allegations about unlawful conditions of detention. These, too, consist of confusing conclusory assertions about collusion between different actors, rather than a coherent set of facts that gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (quoting

7

*Twombly*, 550 U.S. at 555). For instance, the amended complaint alleges that various government officials "at the request of Kyndryl tried to assassinate Vincent N. Cannady by placing him on a plane flight" despite knowing that he has post-traumatic stress disorder that is triggered by airplanes. ECF No. 7 ¶ 8. Later, it states that the former Secretary of Veterans Affairs colluded with the state correctional facility where Cannady is currently detained and others to "have surgeries on Vincent N. Cannady's eyes while he is awake." *Id.* ¶ 21. Other defendants from the Department of Veterans Affairs allegedly denied Cannady "acceptance into any PTSD and homeless programs" in order to deny him a "back-pay claim that is over fifteen years old." *Id.* The amended complaint seems to draw a connection between this denial and his bond conditions in the Southern District of New York, but it is difficult to parse what the connection is. *Id.* These portions of the complaint therefore fail to satisfy the "minimum requirements" to state a claim for relief. *Jones*, 835 F.3d at 79.

The amended complaint's allegations about the shooting of Cannady's service dog fall short for the same reason. The amended complaint asserts that two people in Missouri violated the Americans with Disabilities Act and the Constitution's ban on cruel and unusual punishment by fatally shooting Cannady's service dog. ECF No. 7 ¶ 27. The amended complaint offers no information about who these individuals are and the circumstances surrounding the shooting. It is therefore impossible for the court to plausibly infer that this incident implicates the Americans with Disabilities Act's protections against disability discrimination by employers, state and local governments, businesses that are open to the public, commercial facilities, transportation providers, and telecommunication companies. *See generally* 42 U.S.C. §§ 12101–12213; 47 U.S.C. §§ 225, 611. It is likewise impossible to tell how this incident could implicate a

8

constitutional provision that constrains the government from imposing cruel and unusual punishments. *See* U.S. Const. amend. VIII.

Finally, it bears mentioning that the amended complaint contains some scattered allegations of harm inflicted on third parties not before the court, like Cannady's spouse, children, and what appears to be another person currently incarcerated with Cannady. But generally, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *See Powers v. Ohio*, 499 U.S. 400, 410 (1991). The "limited exceptions" to that general rule do not apply here, so Cannady may not bring claims premised on these injuries to others. *See id.*

### B. Cannady's Motion For Leave To Amend His Complaint Is Denied

Cannady also moves to amend his complaint by adding the standby counsel assigned to him for the criminal proceeding in the Southern District of New York as an additional defendant. ECF Nos. 48, 49. A party may amend a pleading with "the court's leave," which the court should "freely give" when "justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend may be denied when amendment would be futile. *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).

Cannady's proposed amendment is futile because it "would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Cannady alleges that his standby counsel engaged in "intentional sabotage of Plaintiff's litigation interests" and seeks damages under various constitutional amendments, federal antidiscrimination statutes, and common law. ECF No. 48 at 1. The damages claims based on purported violations of Cannady's constitutional rights fail as a matter of law. Although 42 U.S.C. § 1983 provides a cause of action to sue individuals who violate constitutional rights while acting "under color of" state law for damages, "court-appointed defense attorneys and public defenders do not act under color of

state . . . law when acting in their capacity as defense counsel and, therefore, are not subject" to such claims. *Quiroz v. Moran*, 707 F. App'x 1 (D.C. Cir. 2017). As for the federal statutory claims, Cannady does not support them with adequate factual allegations, instead offering only vague assertions that his standby counsel made discriminatory comments. ECF No. 48 at 4. And because the court does not grant leave to amend the complaint with these additional federal claims, the court declines to exercise supplemental jurisdiction over any proposed state law claims. *See* 28 U.S.C. § 1367(c)(3).

### III.   Conclusion

For these reasons, the court dismisses this action without prejudice. Cannady's "motion for leave to file emergency amended complaint" and "motion to amend defendant" are denied. A separate order accompanies this memorandum opinion.

_____
AMIR H. ALI
United States District Judge

Date:   October 22, 2025